# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:22-cr-00107-SAB-1 |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| v. | ORDER DISMISSING CASE WITHOUT PREJUDICE FOR VIOLATION OF SPEEDY TRIAL ACT |
| FREDERICK FLOYD DAWSON, | |
| Defendant. | (ECF No. 13) |

Currently before the Court is Frederick Floyd Dawson's ("Defendant") motion to dismiss this case with prejudice due to a violation of the Defendant's right to a speedy trial under the Speedy Trial Act.  For the reasons explained herein, Defendant's motion shall be denied to the extent Defendant moves for dismissal with prejudice, and this case shall be dismissed without prejudice.

## I.

## BACKGROUND

On April 20, 2022, the United States of America (the "Government") filed a criminal complaint charging Defendant Frederick Floyd Dawson with theft of government property, a violation of 18 U.S.C. § 641.  (ECF No. 1.)  The complaint alleged that Defendant improperly removed General Services Administration (GSA) credit cards from Death Valley maintenance vehicles, and fraudulently used those cards to pay for gas for his personal vehicle.  (Id. at ¶¶ 1-

23.)  The complaint further alleges that Defendant fraudulently used another GSA credit card to buy over $5,000 in items (appliances and residential materials, such as flooring) for his personal use and for use at his rental property.  (Id. at ¶¶ 27-43.)  The offenses are alleged to have occurred in 2020 and 2021.  (Id. at 15-18.)

On April 24, 2022, Defendant was served with a summons in connection with the criminal complaint.  (ECF No. 5.)  The summons directed Defendant to appear to answer the charge in the criminal complaint on June 7, 2022, at 9:00 a.m.  (Id.)  On June 3, 2022, the Government filed a single-count information charging Defendant with the same offense charged in the criminal complaint, a violation of 18 U.S.C. § 641, theft of government property, a Class A misdemeanor.  (ECF No. 7.)  Defendant made an initial appearance before the Court on June 7, 2022, at which Defendant entered a plea of not guilty.  (ECF No. 8.)

On July 6, 2022, Defendant filed a motion to dismiss this case with prejudice due to a violation of the Defendant's right to a speedy trial under the Speedy Trial Act, brought pursuant to 18 U.S.C. § 3161(b) and 3162(a)(1), Federal Rule of Criminal Procedure 12, Local Rule 430.1, and other applicable statutory and constitutional authorities.  (Def.'s Mot. Dismiss ("Mot."), ECF No. 13.)  On July 20, 2022, the Government filed an opposition to the motion.  (Govt. Opp'n Mot. Dismiss ("Opp'n"), ECF No. 14.)  On July 27, 2022, the Defendant filed a reply brief.  (Def.'s Reply ("Reply"), ECF No. 15.)

On August 2, 2022, the Court held a hearing on Defendant's motion to dismiss.  (ECF No. 17.)  Alex Dempsey appeared on behalf of the Government.  Erin Snider appeared on behalf of the Defendant.  Defendant was present via video.

## II.

## LEGAL STANDARDS

Congress enacted the Speedy Trial Act to solve identified problems inherent in enforcing the Sixth Amendment's guarantee of the right to a speedy trial.  United States v. Pollock, 726 F.2d 1456, 1459 (9th Cir. 1984) (citing United States v. Mehrmanesh, 652 F.2d 766, 769 (9th Cir. 1980); United States v. Antonio, 705 F.2d 1483, 1485 (9th Cir.1983)).  The Speedy Trial Act requires the Government to file an information or indictment within thirty (30) days of an

arrest or service of a summons where a defendant is charged with an "offense."  18 U.S.C. § 3161(b) ("Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.").  "[T]he term 'offense' means any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress (other than a Class B or C misdemeanor or an infraction, or an offense triable by court-martial, military commission, provost court, or other military tribunal)."  18 U.S.C. § 3172(2).  Thus, the Speedy Trial act applies to cases involving felonies, and Class A misdemeanors.  United States v. Boyd, 214 F.3d 1052, 1055 (9th Cir. 2000) ("The Speedy Trial Act applies to class A misdemeanors." (citing 18 U.S.C. § 3172(2))).

If the Government fails to file an information or indictment within the time limit, the charge against the Defendant "shall be dismissed or otherwise dropped."  18 U.S.C. § 3162(a)(1) ("If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.").

"In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  18 U.S.C. §3162(a)(1).  "The choice of whether to dismiss with or without prejudice depends on a careful application of the statutorily enumerated factors to the particular case; there is no presumption in favor of either sanction."  United States v. Clymer, 25 F.3d 824, 831 (9th Cir. 1994); United States v. Taylor, 487 U.S. 326, 336 (1988) ("Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review.").  "As with the ends of justice determination in § 3161, the statute sets forth certain factors the court must consider 'among others,' suggesting

that the court has broad discretion in considering any other relevant factors to the case." United States v. Sheikh, 493 F. Supp. 3d 883, 889 (E.D. Cal. 2020).

## III.

## DISCUSSION

The Government served Defendant with a summons in connection with the charge in the criminal complaint on April 24, 2022, but did not file the information until June 3, 2022, forty (40) days after it served Defendant with the summons. Given this, Defendant argues the Government failed to comply with 18 U.S.C. § 3161(b). (Br. 3.) The Government does not dispute that this case must be dismissed for the failure to abide by the Speedy Trial Act, however, the Government disagrees this action should be dismissed with prejudice. The Court now turns to consideration of the relevant factors to determine whether the Court should dismiss this action with prejudice or without prejudice. 18 U.S.C. §3162(a)(1).

### A.    The Seriousness of Offense

"In determining whether to dismiss the case with or without prejudice, the court shall consider . . . the seriousness of the offense." 18 U.S.C. §3162(a)(1).

#### 1.    The Parties Arguments

Defendant argues several district courts have recognized that in cases of Class A misdemeanors, the first factor of seriousness of the offense weighs in favor of dismissal with prejudice, as Class A misdemeanors are one of the least serious offenses prosecuted in federal court.

The Government responds that this case is very serious; that Defendant was an employee with the National Park Service and entrusted with use of a credit cards and vehicles; that he betrayed that trust by stealing money by fraudulently using the credit cards entrusted to him; that he used such money to fraudulently purchase gas for his personal truck and appliances and other materials that he used for his home and rental property. (Opp'n 3.) If convicted, Defendant may be ordered to serve 1 year in prison, pay a $100,000 fine, serve 5 years of probation, and be ordered to pay restitution.

Defendant replies the Government provides no case law in support of their contention,

reemphasizes Class A misdemeanors are the least serious offenses to which the Speedy Trial Act applies, and submits that if a Class A misdemeanor is "serious," then all offenses would be "serious," rendering this factor meaningless.  Defendant further replies that the Government's own lackadaisical attitude in this case suggests it does not view the case as serious, as emails in discovery suggest the U.S. Park Ranger authored the criminal complaint on May 10, 2021, but the Government inexplicably chose to wait until April 20, 2022, nearly a year later, to file the complaint and initiate the prosecution.  Even after that, it was unprepared to meet its discovery obligations, as Defendant did not even receive complete discovery until July 8, 2022, fifteen days after the June 21, 2022 deadline.  (Reply 2; Decl. Erin Snider Reply ("Snider Reply Decl.") ¶ 4, ECF No. 15-1 at 1-2.)

> 2.    The Court finds the Seriousness of the Offense Weighs in Favor of Dismissal Without Prejudice

Defendant has directed the Court to district court cases indicating that, in the somewhat limited universe of these Class A misdemeanor Speedy Trial Act violation cases, courts typically or have almost uniformly found Class A misdemeanors to be not serious.  See United States v. Nash, No. 2:08-MJ-00678-RJJ-RJ, 2010 WL 702438, at *2 (D. Nev. Feb. 19, 2010) ("Class A misdemeanors which constitute some of the least serious offenses prosecuted in federal court . . . are the least serious category of criminal activity to which the Speedy Trial Act applies . . . the Government urges the court to find that the charges in this case are serious because Nash faces the potential of large monetary fines . . . potential imposition of a large monetary fine does not make the misdemeanor charges any more serious than the fact that Nash may potentially be found not guilty or required to pay substantially less than the sought after fine[,] [therefore the] charges in this matter are not serious—regardless of the potential monetary fine [and] non-serious nature of the charges weighs heavily in favor of dismissal with prejudice."); United States v. Montecalvo, 861 F. Supp. 2d 110, 115 (E.D.N.Y. 2012) (noting "large majority of courts to assess this factor have found that the crime at issue is not serious when it is a misdemeanor charge"); United States v. Fawster, No. 1:12-MJ-364PAS, 2013 WL 4047120, at *4 (D.R.I. Aug. 9, 2013) (same); United States v. Lambson, No. CR 17-27-M-DLC, 2018 WL

443453, at *2 (D. Mont. Jan. 16, 2018) ("[C]lassification of the crime of 'false official writing' as a Class A misdemeanor indicates that the offense is not serious."); United States v. Rodriguez-Gutierrez, No. CR-07-242 HRL, 2007 WL 1520951, at *2 (N.D. Cal. May 22, 2007) (stating "the offense, a misdemeanor, is one of the less serious offenses prosecuted in this court," without further discussion).

In Nash, the defendant was charged with: (1) trespassing in violation of 43 C.F.R. § 9239.0–7; (2) failure to comply with a closure order in violation of 43 C.F.R. § 8364.1(d); (3) expired motor vehicle registration in violation of 43 C.F.R. § 8365.1–7(a) and Nevada Revised Statute 482.545; and (4) unsafe operation of a motor vehicle in violation of 18 U.S.C. § 13, 43 C.F.R. § 8365.1–6, and 58 Fed. Reg. 29628, 2.1(a), though the third count was proposed to be dismissed prior to the hearing.  Nash, 2010 WL 702438, at *1 n.1.  The complaint relates to a single incident date, and the charges stemmed from allegations defendant removed or damaged natural resources by driving a vehicle in a dry creek bed in a closed area off the established road in Red Rock Canyon National Conservation Area.  See id. (ECF No. 1).

In Montecalvo, the defendant's charges arose from "a bid-rigging scheme to artificially inflate prices and manipulate the awarding of publicly-funded contracts to repair and resurface roads in Suffolk County," specifically by rigging bidding contracts on two contracts by colluding with another asphalt company.  Montecalvo, 861 F. Supp. 2d at 112.  Of note, the court engaged in a detailed analysis of the seriousness of the offense, ultimately concluding "that the factor of a serious offense in this case does not weigh in favor of either party."  Montecalvo, 861 F. Supp. 2d at 116.  The court recognized the crime was "arguably serious . . . charged with rigging the public bidding process of a local government through the mails in a collusive manner, so that he was indicted along with nine other individual and corporate defendants for two counts of mail fraud conspiracy . . .  bid-rigging is a form of racketeering . . . and racketeering has been found to be "serious" for Speedy Trial Act purposes."  Id. at 115.  The court also considered the non-violent nature of the crime, as well as the fact the government had sat on the case for five (5) years, which demonstrated a "laissez faire attitude" and "weigh[ed]against the gravity" of the crimes.  Id. at 116.

In <u>Fawster</u>, the defendant was charged with a misdemeanor for pulling fire alarms on six consecutive floors of a U.S. Veterans Administration Medical Center.  <u>Fawster</u>, 2013 WL 4047120, at *1.  In <u>Lambson</u>, the defendant was a "public officer authorized by law to make a certificate and is alleged to have knowingly issued 'Red Cards' to unqualified wildland firefighters," and charged with a single count of false official writing.  <u>Lambson</u>, 2018 WL 443453, at *1.  In <u>Rodriguez-Gutierrez</u>, the defendant was originally charged with a felony violation of 18 U.S.C. § 1542, which provides penalties for anyone who: "willfully and knowingly makes a false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States," and was charged by a superseding information charging a violation of 18 U.S.C. Section1028(a), Fraud and Related Activity in Connection with Identification Documents, a class A misdemeanor.  <u>Rodriguez-Gutierrez</u>, 2007 WL 1520951, at *1.

Defendant is correct the Government has provided the Court with no caselaw where courts have found a Class A misdemeanor to be serious, or very serious, generally or specifically in the context of a motion to dismiss for violation of the Speedy Trial Act.  Nonetheless, the Court rejects Defendant's argument that if a Class A misdemeanor is found to be "serious," then all offenses would be "serious," and such a determination would render this factor of the Speedy Trial Act violation analysis meaningless.

First, in addition to the <u>Montecalvo</u> finding the seriousness of the misdemeanor did not weigh in favor of either party given the competing considerations, 861 F. Supp. 2d at 115-16, the Court has located at least one case where the court found a Class A misdemeanor to be serious. In <u>Barreiro-Molina</u>, defendant was charged with the Class A misdemeanor of possession of a firearm in a federal facility, 18 U.S.C. § 930(a).  <u>U.S. v. Barreiro-Molina</u>, CR 19-1476 (MEL), 2019 WL 4894256 (D.P.R. Oct. 3, 2019).  This law provides that: "whoever knowingly possesses or causes to be present a firearm or other dangerous weapon in a Federal facility (other than a Federal court facility), or attempts to do so, shall be fined under this title or imprisoned not more than 1 year, or both."  18 U.S.C. § 930(a).  The court found the offense as alleged was serious, where the defendant was "charged of bringing a .40 caliber Smith and Wesson pistol,

loaded with a magazine containing 14 rounds of .40 caliber ammunition, and an additional magazine containing 14 more rounds of .40 caliber ammunition onto federal property . . . Defendant [allegedly] admitted he was aware of the prohibition against firearms on federal property." Barreiro-Molina, 2019 WL 4894256.  The Court does not find it prudent to consider a categorical exemption that would foreclose a court from considering such offense of bringing a loaded firearm and additional ammunition onto federal property to be serious, simply because it is classified as a Class A misdemeanor.

Fawster does seem to support Defendant's categorical argument, in the manner that court rejected the prosecution's argument.  See Fawster, 2013 WL 4047120, at *4 (emphasis added) ("While the government correctly points out that the pulling of fire alarms in a hospital can have a serious adverse impact on the operation of the facility, it remains a Class A misdemeanor and *therefore* a nonserious offense.").  Lambson also initially provides support for Defendant's categorical argument.  In Lambson, the district court in fact rejected both parties' agreement that the offense *was* serious, finding it instead to be not serious because of its classification: "Despite the agreement of the parties that this offense is serious, and the fact that the charge alleges a crime of dishonesty, the Court is satisfied that the classification of the crime of 'false official writing' as a Class A misdemeanor indicates that the offense is not serious."  Lambson, WL 443453, at *2.  However, beyond that indication, the court rejected the prosecution's somewhat speculative or insufficiently connected arguments concerning unrelated firefighter deaths, and then instead used its own experience to weigh the seriousness of the crime as related to other crimes that come before the court:

> The Government contends that "the proper certification of wildland firefighters is serious, given the deaths of two properly-certified firefighters in Montana this past fire season."  The Court declines to conjecture on the role of certification in the deaths of these firefighters or to extrapolate their significance to determining the seriousness of the crime of "false official writing."  In the Court's experience, the crime of "false official writing," while not the least serious crime a person could commit, is merely a misdemeanor and is significantly less serious than the majority of crimes brought before this Court.

Lambson, 2018 WL 443453, at *2.  Thus there is some merit to the suggestion that the least

serious category of crimes covered under the Speedy Trial Act should never be considered serious, and support is found in the cases cited by Plaintiff.  While the Government has not provided much legal support for their argument that the offense is serious here, the Court nonetheless must first reject the Defendant's suggestion to apply a categorical finding to all Class A Misdemeanors under the statute.

First, the Court finds the discussion in <u>Cusick</u>, though directed in a different context at the petty offense charged there, to be instructive as to Congressional intent regarding seriousness under the various levels of criminal statutes:

> Federal petty offenses are punishable by a maximum of six months incarceration and a five thousand dollar fine, 18 U.S.C § 19, and do not give rise to a right to a jury trial. *Blanton,* 489 U.S. at 542, 109 S.Ct. 1289. While the defendant in this case faces up to six months incarceration, a term too short to give rise to a right to a jury trial, he also faces (under the law) a fine of up to one hundred thousand dollars—a punishment significantly greater than that applicable to the statutory petty offenses, 18 U.S.C. §§ 19, 3571, and a punishment equal to the monetary punishment applicable to a Class A Misdemeanor, 18 U.S.C. § 3571(b)(5), which carries a maximum period of incarceration of one year.  18 U.S.C. § 3559(6). Indisputably, at least based upon the possible one year of incarceration, a Class A Misdemeanor is a "serious" offense for which a defendant has a right to a jury trial.

> Several reasons persuade me that the offense charged in this case is an example of the "rare situation where a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless" do not cross the six month incarceration line. *Blanton,* 489 U.S. at 543, 109 S.Ct. 1289. Congress' own judgments are the best evidence of the serious nature of this monetary punishment. Congress has determined that one hundred thousand dollars is the maximum fine applicable to a "serious" offense, a Class A Misdemeanor. This is powerful evidence of Congress' judgment that the charged offense is a serious one.

United States v. Cusick, 817 F. Supp. 2d 1, 2 (D. Mass. 2011).

More specifically, the Court finds the standards for determining seriousness for purposes of the Speedy Trial Act remain not thoroughly defined:

> The Ninth Circuit has not explicitly defined "seriousness," but has found that the conspiracy to distribute and the aiding and abetting of the manufacture of cocaine and methamphetamine "are undoubtedly serious," and also that illegal reentry after a felony conviction is a "moderately serious offense." *Id.* at 831; *United States v. Medina,* 524 F.3d 974, 986 (9th Cir.2008); *United States v. Pena–Carillo,* 46 F.3d 879, 882 (9th Cir.1995).

> While the standards for judging "seriousness" remain vague, the Fifth and District of Columbia Circuits have ruled that using the penalty as a measure of the severity of the crime is an appropriate method of analysis under the Speedy Trial Act. *See United States v. Melguizo,* 824 F.2d 370, 371 (5th Cir.1987); *United States v. Bittle,* 699 F.2d 1201, 1208 (D.C.Cir.1983). However, courts have clarified that although the penalty is one factor to consider, it is not the sole factor. A district court "should judge the seriousness of an offense upon its own merits." *United States v. Wright,* 6 F.3d 811, 814 (D.C.Cir.1994). While a primary method of judging the seriousness of an offense is by comparing it to other crimes, that does not mean that a mechanical test based upon the Sentencing Guidelines must be used to label an offense "serious" or "not serious." *United States v. Pierce,* 17 F.3d 146, 149 (6th Cir.1994). Rather, the Speedy Trial Act's requirement that courts must consider "the seriousness of the offense" simply demands that the gravity of the crime be carefully considered as a factor in deciding whether to dismiss without prejudice. *Id.* The First Circuit has held that "the graver the crimes the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence." *United States v. Hastings,* 847 F.2d 920, 925 (1st Cir.1988).

United States v. Lewis, No. CR 04-217 PJH, 2009 WL 250482, at *2 (N.D. Cal. Feb. 3, 2009), aff'd, 611 F.3d 1172 (9th Cir. 2010).

It appears to the Court that Defendant's proposition can be flipped. That is, if the Court were to accept Defendant's proposition that all Class A misdemeanors are to be considered *not* serious for purposes of the consideration of this statutorily enumerated factor, this factor *would* be rendered meaningless for all Class A misdemeanors, which are included in the definition of "offense." "The choice of whether to dismiss with or without prejudice depends on a careful application of the statutorily enumerated factors *to the particular case*; there is no presumption in favor of either sanction." Clymer, 25 F.3d at 831 (emphasis added); see also Taylor, 487 U.S. at 336 ("Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case."). Therefore, the Court finds the statute indeed directs the Court to weigh the seriousness of Class A misdemeanors, or in other words, the district court "should judge the seriousness of an offense upon its own merits." Lewis, No. CR 04-217 PJH, 2009 WL 250482, at *2 (quoting United States v. Wright, 6 F.3d 811, 814 (D.C. Cir. 1994)).

The Court finds greater support for the proposition that Congress did not intend to

foreclose a district court from determining the "seriousness" of a Class A misdemeanor for the prejudice analysis under the Speedy Trial Act. The term "offense" is defined to include Class A misdemeanors for purposes of the Speedy Trial Act. See 18 U.S.C. § 3172(2); see also Cusick, 817 F. Supp. 2d at 2 ("Congress has determined that one hundred thousand dollars is the maximum fine applicable to a 'serious' offense, a Class A Misdemeanor [and] [t]his is powerful evidence of Congress' judgment that the charged offense is a serious one."). The Court is to carefully consider the "seriousness of the offense." 18 U.S.C. §3162(a)(1). It appears Congress intended for the Court to consider the seriousness of the offense, as alleged, by, for example, considering the specific factual circumstances of the offense as alleged,[1] rather than simply the particular section code of the statute an offense may have been filed under. Congress did not define specific offenses under the statute as serious or not, nor did it specify that Class A misdemeanors were not serious, and it could have done so. Instead, Congress directed the Court to consider the seriousness of the offense, which includes under the penumbra of "offense," Class A misdemeanors. The Court thus rejects the Defendant's proposition as the Court finds adopting it would in fact strip the Court of the ability to meaningfully and carefully consider each of the statutory factors to the case at hand.

Further, a categorical exclusion of Class A misdemeanors would ignore the ability of the Court to consider connections to the other enumerated factors. In the Court's view, the seriousness of the offense has interplay with the length of delay and potential prejudice to the Defendant, as wells as other considerations related to the second and third enumerated factors, given, for example, there is a lesser likelihood of incarceration pending charges and a likely lessening of other adverse consequences on a defendant, generally with Class A misdemeanors. See Lambson, 2018 WL 443453, at *3 (in considering length of delay under second factor of facts and circumstances leading to dismissal, noting "[t]he Court [was] not convinced that a

---

[1] Rather than only considering the statute a defendant is charged under, it seems courts should consider things such as the number and severity of each of the alleged acts that fall under the offense, and the period of time the acts occurred within for the charged offense, such as whether it one time on one day offense versus once a week for a period of years. Taken to an extreme here, would the Defendant suggest that theft of a government owned pencil sharpener is categorically as serious as the alleged acts here, and the Court is to only consider the criminal statute's name or offense only in the most general sense, if it falls under the classification of a Class A misdemeanor?

pending Class A misdemeanor charge causes the drain on financial resources, curtailment of association, anxiety, or public obloquy warranting dismissal with prejudice.").

Courts do indeed consider the specific factual circumstances of the offense as alleged.  In Lewis, the court considered the number of incidents, duration, and impact of the alleged acts, but declined to consider age and prior criminal history as inappropriate factors in judging the seriousness of the offense:

> Although Lewis' sentence was less than five years, as noted above, the penalty is *not* the only relevant consideration. Looking at the specific circumstances of Lewis' crimes, the court finds the gravity of Lewis' misconduct to be significant. Lewis' offense was not limited to a single, isolated incident. Instead, over a significant period of time, he intentionally secured numerous unlawful shipments of protected wildlife not only in contravention of domestic and international law, but in "insult to societal interests" as well. *See id.* Some of the animals died in transit, completely defeating the purpose of the laws designed to protect them, while others were successfully smuggled into an alien environment, leading to potentially harmful effects on the animals themselves as well as the domestic environment. Defendant's youth and lack of criminal history, while factors that bear on his sentence, do not in anyway suggest a lack of seriousness of his crimes.

Lewis, 2009 WL 250482, at *3; see also United States v. Kurt, 945 F.2d 248, 253 (9th Cir. 1991) ("In both cases before us on appeal, the district courts thoroughly reviewed the facts pertinent to the seriousness of the offenses at issue.  Not only does Kurt face substantial penalties for each of his offenses, the factual findings indicate that the defendant had the materials and ability to produce counterfeit bills, to protect his illicit business with unregistered firearms, and to avoid prosecution . . . viewing these findings as a whole, we conclude that the district courts had ample evidence with which to arrive at their conclusions that Kurt's offenses are serious within the meaning of Section 9(1).").

In consideration of the offense alleged here, the Court finds the seriousness of the offense alleged here weighs in favor of dismissal without prejudice.  Defendant is not accused of being involved in an isolated incident that occurred on one day.  See Nash, 2010 WL 702438, at *2 (incident involving vehicle in national conservation area occurring on one date); Fawster, 2013 WL 4047120, at *1 (pulling fire alarms on one date); United States v. Osunde, 638 F. Supp. 171, 173 (N.D. Cal. 1986) ("Both violations are alleged to have occurred in San Francisco on May 17,

1984, the date on which the defendant apparently submitted his application for a U.S. passport.").   The complaint here alleges thousands of dollars in fraudulent charges on the government credit cards, spanning dozens of individual dates over multiple years, while Defendant was entrusted with assisting in the caretaking of the national park (ECF No. 1 at 5-18).  See Lewis, 2009 WL 250482, at *3 ("Lewis' offense was not limited to a single, isolated incident [but] [i]nstead, over a significant period of time, he intentionally secured numerous unlawful shipments of protected wildlife not only in contravention of domestic and international law, but in 'insult to societal interests' as well.").

The offense here involved a breach of the public trust and is related to the Government's role and obligation in the safekeeping of our national parks.  Indeed, the fact the offenses are alleged to have occurred over multiple years at Death Valley National Park is highly significant to the Court's finding that the seriousness of the offense weighs in favor of dismissal without prejudice.  Defendant worked at Death Valley National Park for 19 years, and was entrusted with a role in the maintenance and safekeeping of the park by the public.  (Compl. ¶ 13, ECF No. 1 at 6.)  The United States has a long standing tradition of establishing and protecting national parks for their preservation and for the enjoyment by all who are able to visit.  See Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior, 282 F.3d 818, 820 (D.C. Cir. 2002) ("The history begins with the discovery of 'Old Faithful' and the other natural wonders of what is now Yellowstone National Park."); Ashley v. United States, 215 F. Supp. 39, 44 (D. Neb. 1963) ("There can be no question but that the government invites the public to come into Yellowstone Park to enjoy its beauty and facilities; this is the reason it was set aside as a national park."); N. Alaska Env't Ctr. v. Lujan, 872 F.2d 901, 906 (9th Cir. 1989) ("Congress has charged the Secretary [of Interior] with the responsibility of protecting the natural beauty of our national parks for coming generations of visitors."); see also National Park Service - About Us, available at https://www.nps.gov/aboutus/index.htm ("Since 1916, the National Park Service has been entrusted with the care of our national parks.  With the help of volunteers and partners, we safeguard these special places and share their stories with more than 318 million visitors every year . . . The National Park Service preserves unimpaired the natural and cultural resources

2  and values of the National Park System for the enjoyment, education, and inspiration of this and future generations.")  (last accessed August 10, 2022).

3  The Court further does not find the fact the Defendant was interviewed in May of 2021,
4  nearly a year before this action was filed, to clearly demonstrate a lack of seriousness on the part
5  of the prosecution.  See Montecalvo, 861 F. Supp. 2d at 116 (considering government sat on the
6  case for five (5) years, which demonstrated a "laissez faire attitude" and "weigh[ed]against the
7  gravity" of the crimes.").  Additionally, the Government, while not specifically stating they are
8  seeking jail time, do emphasize that if convicted, Defendant may serve one (1) year in prison.
9  Nash, 2010 WL 702438, at *2 n.4 ("Government is not seeking any jail time.").

10  Accordingly, the Court finds this is a serious Class A Misdemeanor, and the
11  "seriousness" of the "offense" as alleged, weighs in favor of dismissal without prejudice for
12  purposes of the Speedy Trial Act violation prejudice analysis.  18 U.S.C. §3162(a)(1).

13  **B.    The Facts and Circumstances Leading to Dismissal**

14  "In determining whether to dismiss the case with or without prejudice, the court shall
15  consider . . . the facts and circumstances of the case which led to the dismissal."  18 U.S.C.
16  §3162(a)(1).

17  1.    The Parties' Arguments

18  Defendant proffers that it has no reason to believe the Government acted in bad faith and
19  concedes the ten-day delay is not exceptionally long.  (Mot. 4.)  Defendant argues
20  "[n]evertheless, this factor weighs somewhat in favor of dismissal."  (Id.)  Defendant highlights
21  that according to the complaint, the alleged offense occurred between 2018 and March 10, 2021;
22  law enforcement officers interviewed Defendant about the alleged offense on May 5, 2021; and
23  therefore, Defendant states the Government "sat" on the charge for nearly a year before filing the
24  criminal complaint on April 20, 2022.  (Br. 4-5.)

25  Defendant further submits that delays in the prosecution persisted even after the
26  Government filed the criminal complaint.  For example, discovery was due on June 21, 2022.
27  (ECF No. 8.)  On June 21, 2022, the Government provided the Defendant's counsel a criminal
28  history report and a video recording of Defendant's May 5, 2021 interview.  (Mot. 5; Decl. Erin

Snider Supp. Mot. Dismiss ("Snider Decl.") ¶ 3, ECF No. 13-1 at 1.)  The Government notified the Defendant via email that additional discovery consisting of "various excel files, PDFs, pictures, etc." existed, but that the files were corrupt.  (Id.)  The Government stated that it would be resending the files, but as of the date of the filing of the motion on July 6, 2022, Defendant proffered it had not received the additional discovery.  (Id.)  Defendant suggests the failure to have discovery ready is perplexing given the Government was well-aware of its discovery obligations two months prior to when it filed the complaint and served Defendant with the summons, and is part of a larger pattern of dilatory conduct in this action.  (Mot. 5.)

The Government concedes it failed to file the information or indictment within thirty days of service of the summons, but contends it takes its responsibilities under the Speedy Trial Act seriously, both because it has a duty to do so, and because it believes the Act's mandate is important to the administration of justice.  (Opp'n 4.)  The Government submits three points for consideration.  First, Government's counsel proffers he was unaware that the Speedy Trial Act required an information to be filed within 30 days of service of a summons: "counsel simply was unaware of that rule in Class A misdemeanor cases."  (Id.)  Counsel emphasizes this does not excuse the conduct, but that it hopefully helps explain the circumstances.  Second, the Government contends it made the decision to serve a summons and not seek an arrest warrant in an effort to actually minimize the effect of the prosecution on the Defendant, and as a result of the Government's decision to proceed by way of summons, Defendant has never been in custody, and in fact, has never been required to travel or step foot inside an actual courtroom because the proceedings have been conducted by videoconference.  (Id.)  Third, the Government argues it filed an information approximately 40 days after the service of the summons, but before Defendant's initial appearance, and he was arraigned on that information at his initial appearance.  Therefore, the Government argues Defendant cannot articulate how he was meaningfully prejudiced by the Government's violation.  (Id.)[2]

---

[2]  The Court also considers the somewhat unusual nature of setting matters before judges in the Eastern District, Bakersfield Division.  The Government is somewhat limited to one date per month that a matter may be set before the assigned judge.  This is not precisely the same situation as Fawster.  2013 WL 4047120, at *4 ("Rather, this failure to consider the Speedy Trial Act's impact on Defendant was the result of inadvertence arising from the unusual circumstance of a Class A misdemeanor charged by complaint from the outset of the proceeding.").

Defendant replies that: while it does not doubt the Government's violation was inadvertent, the dilatory prosecution is relevant; while the ten-day delay in filing the information may not, by itself, have prejudiced Defendant, he has had to live under a cloud of anxiety for the last year waiting for the Government to file this charge; and Defendant was in no way responsible for the delay in this case.  (Reply 2.)

2.    The Court finds the Facts and Circumstances Leading to Dismissal Weigh in Favor of Dismissal Without Prejudice

In considering the facts and circumstances leading to dismissal, courts consider the length of delay, the reason for the delay including whether the government was wholly at fault or acted in good or bad faith, and the prejudice to the defendant.[3]

"The length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice to the defendant."  Taylor, 487 U.S. at 340. "There is no bright line rule as to whether a period of delay is substantial enough to weigh in favor of or against dismissal with prejudice."  Montecalvo, 861 F. Supp. at 116 ("Here, the undisputed and unexcluded passage of time is approximately four years, which is quite extraordinary.").  "The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty."  Id. "[I]nordinate delay between public charge and trial, ... wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."  Id. (quoting Barker v. Wingo, 407 U.S. 514, 537 (1972) (White, J., concurring)).

---

Nonetheless, the Court considers this limitation bolsters the Government's proffers concerning their practice, and enhances the Court's finding of a lack of bad faith and a lack of a culture of non-compliance, discussed further herein.

[3]  As discussed in greater detail below, infra Section III(C)(2), consideration of the second and third factors involves overlapping facts, and courts moreover consider prejudice in both the second and third enumerated factors, and as its own separate factor.  Thus, to avoid being overly repetitive on some points, and although the Court does not incorporate all aspects of each section into the other by way of reference, the Court emphasizes that points of consideration raised in this section and in the next, may have relevance to both the second and third factors.

"Where the crime charged is serious, the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay." Id. (quoting United States v. Simmons, 786 F.2d 479, 485 (2d Cir.1986)). "When the delay leaves the defendant in the disadvantageous position of charged but untried for an extended period, the circumstances tip toward dismissal with prejudice." Fawster, 2013 WL 4047120, at *4.

In reviewing the delay in prosecution, courts consider the circumstances and reasons for the delay, whether the prosecution acted in good faith, and whether the prosecution employed a lackadaisical attitude with a resultant dilatory prosecution. See Montecalvo, 861 F. Supp. 2d at 117; Taylor, 487 U.S. at 338 ("We do not dispute that a truly neglectful attitude on the part of the Government reasonably could be factored against it in a court's consideration of this issue."). "[A]lthough the absence of prejudice is not dispositive . . . it [can be a] consideration in favor of permitting reprosecution." Taylor, 487 U.S. at 341. "When dismissing an indictment with prejudice pursuant to the Speedy Trial Act, 'the court should specifically describe the Government's conduct and find that conduct to be more than an isolated unwitting violation, be it a truly neglectful attitude, bad faith, a pattern of neglect, or other serious misconduct.' " Montecalvo, 861 F. Supp. 2d at 117 (quoting United States v. Wells, 893 F.2d 535, 539 (2d Cir.1990).

There are facts and circumstances that weigh in favor of both sides, however, in consideration of the length of delay, the reason for the delay, and the lack of demonstrable prejudice to Defendant, the Court finds this second factor weighs in favor of dismissal without prejudice.

It is true that Defendant has no blame in the delay here. Fawster, 2013 WL 4047120, at *4 ("Nor is there any suggestion of dilatory conduct by Defendant."). However, aside from the Defendant's focus on the fact the Government waited almost a year between investigation and filing this action, the delay here between the summons and the information is not as significant as in other cases, and the circumstances do not strongly support a finding of a lackadaisical attitude toward this prosecution. See Montecalvo, 861 F. Supp. 2d at 117 ("The Court here does not find this to be an isolated unwitting violation of the Speedy Trial Act . . . [y]ears passed

without any documented effort on the part of the Government to move the case to the next stage of the criminal procedure, and this can only be properly characterized as a lackadaisical attitude towards Montecalvo's prosecution."). The Court finds the circumstances here similar to Nash, a primary case Defendant relies on for the severity analysis, where the court, after finding the crime not serious, found the second factor weighed in favor of dismissal without prejudice:

> It appears that the Government's failure in this case is born of unwitting negligence rather than purposeful disregard. The length of delay in this case has been minor. There is no evidence Nash will suffer any prejudice, outside of anxiety and frustration which is attendant in any criminal prosecution, as a result of the delay. Nash is not in custody and the delay has not resulted in the mandated trial date being missed. Additionally, it does not appear the Government has acted in bad faith or with antipathy toward Nash. Thus, on balance, although the court is mindful of the anxiety and frustration the Government's failure may have caused Nash, the facts and circumstances leading to dismissal in this case weigh in favor of dismissal without prejudice.

Nash, 2010 WL 702438, at *2.

The Court does not doubt Defendant's proffer that he has experienced anxiety and stress related to the prosecution, however, anxiety is commonly present when facing criminal charges such as this, and is not an overriding consideration when Defendant was at no time in custody nor had to even be physically present for any appearances before the Court thus far in this action.[4] Compare id. ("There is no evidence Nash will suffer any prejudice, outside of anxiety and frustration which is attendant in any criminal prosecution."), with Fawster, 2013 WL 4047120, at *4 ("[W]hile the Complaint has been pending, Defendant was detained for three days, spent four months on GPS monitoring and almost nine months subject to supervision by Pretrial Services, with restrictions on his ability to travel and loss of access to his passport and personal possessions [and] [t]hese consequences, exacerbated by the delay, have resulted in an adverse impact on Defendant that likely exceeds the consequences that would have been

---

[4] The Court acknowledges the Supreme Court has "observed in prior cases that unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." Doggett v. United States, 505 U.S. 647, 654 (1992) (citations omitted). The Supreme Court stated that as to these "forms of prejudice," the most serious is the impairment of the ability to present a defense. Id. Again, given the lack of pretrial incarceration and limited length of delay of only 10 days, the Court does not find any alleged prejudice resultant from anxiety to significantly sway the analysis here.

imposed had this matter proceeded to trial and a verdict of guilty been rendered [with] [s]uch adverse impact is a factor tipping in favor of dismissal with prejudice."); see also Lambson, 2018 WL 443453, at *3 ("[A]t the time of Lambson's Motion, seventy-eight days had passed since he had been arraigned . . . [a]t the time of this Order, 111 days have passed since Lambson's arraignment [and] [t]he Court is not convinced that a pending Class A misdemeanor charge causes the drain on financial resources, curtailment of association, anxiety, or public obloquy warranting dismissal with prejudice [and] [i]ndeed, during his arraignment, Lambson was appointed counsel pursuant to the Criminal Justice Act, reducing his financial burden."); United States v. Spanier, No. 12CR0918 JM, 2016 WL 2745330, at *5 (S.D. Cal. May 11, 2016) ("Finally, with respect to pretrial liberty, the court notes that Spanier remains on bond, as he has since the commencement of this case [and] [w]hile there is no doubt that Spanier has experienced hardships since the financial fraud scheme was discovered (the seizure of bank accounts, facing foreclosure, borrowing money from family and friends, and disintegrating personal relationships), the court notes that thus far these consequences appear to be the result of Spanier's own conduct in participating in the financial fraud scheme, and not the result of any delay.").

On the other hand, the Court is concerned with the fact the Government failed to provide full and complete discovery on the deadline to do so due to alleged corrupted files. Nonetheless, the Government did provide some discovery on that date, notified Defendant of the corrupted files at that time, and the Defendant has not demonstrated any prejudice, either from the Speedy Trial Act violation nor from the failure to provide the complete discovery on the deadline. While the Court does not consider the Government's actions here to be *as* blame-free as those that existed in Fawster, the Court does not find a culture of noncompliance, as further discussed in the next section, and finds the Government's practice here, although flawed, was not based on bad-faith. See Fawster, 2013 WL 4047120, at *4 ("[T]his is not a circumstance where there is evidence of any blameworthy delay by the government, never mind a "culture of noncompliance" as was condemned by the court in *Nash*."). The Court partially accepts the proffer this was an inadvertent mistake on the part of the Government stemming from their

manner of filing the complaint and information, apparently in an effort to lessen the impact on the Defendant.  This proffer provides some additional support for dismissal without prejudice. See Fawster, 2013 WL 4047120, at *4 ("Rather, this failure to consider the Speedy Trial Act's impact on Defendant was the result of inadvertence arising from the unusual circumstance of a Class A misdemeanor charged by complaint from the outset of the proceeding."); United States v. Pena-Carrillo, 46 F.3d 879, 882–83 (9th Cir. 1995) (finding second factor weighed in favor of dismissal without prejudice because "there [was] no evidence of purposeful wrongdoing on the part of the prosecutor [and] [t]he failure to secure an indictment within 30 days was apparently inadvertent, and the U.S. Attorney's Office attempted to rectify this error by indicting Pena–Carrillo as soon as possible thereafter.").

Accordingly, for the above reasons, the Court finds the facts and circumstances leading to dismissal weigh in favor of dismissal without prejudice.

### C.    The Impact of Reprosecution on the Administration of the Speedy Trial Act and Justice

"In determining whether to dismiss the case with or without prejudice, the court shall consider . . . the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. §3162(a)(1).

#### 1.    The Parties' Arguments

Defendant argues that the violation here is not an isolated incident, and directs the Court to a number of cases in this district that Defendant contends demonstrates the Government has exhibited a pattern of neglect in administering the Speedy Trial Act in the context of Class A misdemeanors.   See United States v. Salcedo, Case No. 1:22-cr-00070-SAB-1 (E.D. Cal.) (information filed fifty-one days after service of summons); United States v. Horsman, Case No. 1:22-cr-00106-SAB (E.D. Cal.) (information filed thirty-one days after service of summons); United States v. Armenta, Case No. 5:20-mj-00046-JLT (E.D. Cal.) (indictment or information never filed and the government moved for dismissal of the Class A misdemeanor charge 134 days after service of summons); United States v. Goyeneche, Case No. 5:17-cr-00001-JLT (E.D. Cal.) (indictment or information never filed and 109 days elapsed under the Speedy Trial Act

prior to the defendant agreeing to exclude time); United States v. Granados, Case No. 5:15-cr-00001-JLT-1 (E.D. Cal.) (indictment or information never filed and case dismissed following the defendant's motion to dismiss for failure to file a timely indictment or information); United States v. Villani, Case No. 5:14-cr-00012-JLT (E.D. Cal.) (indictment or information never filed and case dismissed following the defendant's motion to dismiss for failure to bring the defendant to trial within the seventy days prescribed by the Speedy Trial Act).

Defendant emphasizes that defense counsel has twice moved for dismissal in these cases in which the Government failed to file a timely information. (Br. 6.) In Granados, the defense moved for dismissal on such basis, and although the defense cited Federal Rule of Criminal Procedure 58 as the basis of the motion, the defense cited in support of the motion, Boyd, 214 F.3d 1052, which did address a challenge under the Speedy Trial Act. See Case No. 5:15-cr-00001-JLT-1, ECF No. 7. Additionally, in Villani, the defense moved for dismissal, on the basis of a violation of 18 U.S.C. § 3161(c), which governs the time limit within which a trial must commence, and in support of that motion, the defense noted the Government routinely failed to file an indictment or information in cases charging Class A misdemeanors. See Case No. 5:14-cr-00012-JLT (ECF No. 7). Defendant argues dismissal with prejudice will send a strong message to the Government that it must comply with the mandates of the Speedy Trial Act.

The Government responds that the reprosecution of this offense would not negatively impact the administration of the Speedy Trial Act or of justice for three primary reasons. (Opp'n 4.) First, the Government proffers it believes that it has a culture of Speedy Trial Act compliance and respect for the administration of justice. Counsel submits that he is unaware of any Speedy Trial Act litigation in the Eastern District concerning this issue in the last five years since he has been involved in misdemeanor prosecutions. The Government strongly disputes the claim there is a pattern of neglect in following the Speedy Trial Act, as while the Defendant cites to two cases involving litigation on this issue, one from 2015 and one from 2014, such cases are nearly seven years old and counsel was unaware of the cases. (Opp'n 4-5.) As to these two cases, the Government further notes that the Government there was represented by a law enforcement officer pursuant to Local Rule 180; and the Government filed no oppositions to the

motions to dismiss filed in those cases, and thus it is unclear if the United States Attorney's Office had actual knowledge of these cases, "even though it obviously should have." (Opp'n 5 n.2.) The Government further proffers the three other cited cases did not involve litigation of Speedy Trial Act issues, despite the fact that two of the three defendants were each being represented by the Federal Defender's Office, and the third was represented by a partner at the Larson LLP firm, and a former Assistant U.S. Attorney. (Opp'n 5.) The Government suggests that this does not excuse the Government's violation, but simply explains the violation identified by counsel appears to be one not well known to many competent attorneys who practice criminal law in the Eastern District. (Id.)

Second, the Government argues that sending a strong message, even if permitted, is not required because "a very strong message has already been sent." (Opp'n 5.) The Government maintains that it has entirely changed its handling of Class A misdemeanor prosecutions to ensure future violations do not happen. The Government affirms that moving forward, in all Class A misdemeanor cases, it will either: (1) file information on Class A misdemeanors at the outset; or (2) initially proceed by complaint and file an information within the statutory time period. Third, the Government states that dismissal with prejudice will have a negative impact on the administration of justice because it would allow a defendant to potentially avoid serious charges based on an unintentional error that caused no meaningful prejudice to the Defendant.

Defendant replies that while they appreciate the professed commitment to compliance moving forward, the problem here is not a single prosecutor, and Defendant has cited six cases in which the Government violated a defendant's right under the Speedy Trial Act – each of these cases involved a different prosecutor,[5]–and the fact that six different prosecutors would be unaware of the requirements of the Speedy Trial Act speaks to a larger institutional failure to

---

[5] Specifically, Defendant notes that Assistant United States Attorneys Alexandre Dempsey and Jeffrey Spivak are counsel of record in United States v. Salcedo, Case No. 1:22-cr-00070-SAB; Assistant United States Attorney Alexandre Dempsey is counsel of record in United States v. Horsman, Case No. 1:22-cr-00106-SAB. Special Assistant United States Attorney Philip Nikolai Tankovich was counsel of record in United v. Armenta, Case No. 5:20-mj-00046-JLT (E.D. Cal), at the time of the Speedy Trial Act violation. Special Assistant United States Attorney Darin Rock was counsel of record in United States v. Goyeneche, Case No. 5:17-cr-00001-JLT; Rule 180 prosecutor Justin Norris was counsel of record in United States v. Granados, 5:15-cr-00001-JLT; and Rule 180 prosecutor Brien Chartier was counsel of record in United States v. Villani, Case No. 5:14-cr-00012-JLT.

provide adequate training on the mandates of the Act.  (Reply 2-3.)  Defendant argues that while the Government complains two prior motions to dismiss touching on the issue were filed seven years ago, the fact violations have continued suggests the U.S. Attorney's Office lacks the means of monitoring these cases and handing down appropriate institutional knowledge, and thus the Government's promise that practices will change "rings hollow."  (Reply 3.)

Defendant also replies that the issue here is not obscure or complicated – the language of the Speedy Trial Act is clear, there is no shortage of caselaw confirming that the Speedy Trial Act means what it says – and while a single violation can be chalked up to a mere oversight, six cases—four of which were filed after litigation touching upon this issue—suggests a widespread problem that the Government as a whole is not responding to appropriately.  See Clymer, 25 F.3d at 832 ("[T]he Act's most severe sanction is appropriate where the surrounding circumstances lead us to conclude that district courts and United States Attorneys' offices have failed to recognize or implement our long-standing precedents."); Taylor, 487 U.S. at 339 (noting evidence "suggesting something more than an isolated unwitting violation" would weigh in favor of dismissal with prejudice).  Lastly, Defendant responds that while the Government complains dismissal with prejudice would allow Defendant to avoid any consequences for the alleged conduct, the Government ignores that Defendant was forced to resign as a result of the investigation, and the Government still has civil remedies it can pursue.  (Reply 3-4.)

2.    The Court finds Consideration of the Impact of Reprosecution on the Administration of Justice and on the Speedy Trial Act Weighs Slightly in Favor of Dismissal Without Prejudice

Again, based on a review of a number of cases, it appears courts consider overlapping facts when considering the second and third enumerated factors.  Thus, courts recognize "this [third] factor is closely aligned with the facts that [may lead] to dismissal; the more egregious the Government's role in the violation and the more severe the delay, the more dismissal with prejudice is warranted."  Montecalvo, 861 F. Supp. 2d at 118–19 (quoting United States v. Mora, No. 04 Cr. 00530, 2005 WL 1354042, at *6 (S.D.N.Y. June 7, 2005)); see also United States v. Lewis, 611 F.3d 1172, 1180 (9th Cir. 2010) ("As to [both] the second and third factors,

the district court found that the government and the court itself had acted in good faith[;] [that] [t]heir desire to facilitate the efficient use of judicial resources through a joint trial was genuine and reasonable[;] [and] [t]he case was complex and appropriately demanded considerable preparation by all parties.").  As one court observed, all three enumerated factors have interplay and overriding considerations:

> As an initial matter, this factor cannot be viewed in isolation from the others. Whether a dismissal without prejudice will have an adverse impact on the administration of the Act or on the administration of justice depends, in large part, on the seriousness of the Defendant's alleged crime and on the reasons for the delay. A court may take into account a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices in determining the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *Taylor,* 487 U.S. at 338.

United States v. Perez, No. CRIM. 09-00025, 2011 WL 2294194, at *7 (D. Guam June 8, 2011).

Within this third factor, courts consider prejudice as related the length of delay and the ability to prepare for trial.  See United States v. Dominguez-Zamdio, 211 F.3d 1275 (9th Cir. 2000) (in considering prejudice under third factor, noting "the length of the detention did not adversely affect Dominguez' ability to prepare for trial." (citing Taylor, 487 U.S. at 334)); Montecalvo, 861 F. Supp. 2d at 114 ("The third factor—the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, must, of necessity, also embrace the unexpressed factor of prejudice to the defendant." (quoting United States v. Upton, 921 F. Supp. 100, 105 (E.D.N.Y. 1995)); see also Upton, 921 F. Supp. at 105 ("The prolonged delays in this case are the targets at which the Speedy Trial Act was clearly aimed and weighs heavily in the balance as does the adverse effect those prolonged delays must inevitably have upon the presentation of a meaningful defense.").  Other courts sometimes consider prejudice as a separate additional "other factor." See Perez, 2011 WL 2294194, at *7 (considering prejudice as a fourth separate factor, noting the "longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty." (quoting Taylor, 487 U.S. at 340–41)); United States v. Ramirez-Flores, No. 2:18-CR-93-RMP, 2018 WL 5816766, at *6 (E.D. Wash. Nov. 6, 2018) (considering

prejudice as a fourth separate factor, and noting "prejudice to the defendant should not be the dispositive factor in the section 3162 analysis." (citing Taylor, 487 U.S. at 333-34)).

In evaluating the third factor, courts consider "whether the Speedy Trial Act violation was a result of any purposeful wrongdoing by the prosecutor."  Ramirez-Flores, 2018 WL 5816766, at *6 (citing Pena-Carrillo, 46 F.3d at 882.[6]  As the parties recognize, the Court is not to dismiss with prejudice solely "in order to send a strong message to the Government that unexcused delays will not be tolerated," as that goal or factor is "by definition implicated in almost every Speedy Trial Act case."  Taylor, 487 U.S. at 343; Dominguez-Zamdio, 211 F.3d 1275 ("recognizing that even if the "government's role in the delays is significant, sending a strong message to the government for its role in the delays alone does not justify dismissing a case with prejudice."); Ramirez-Flores, 2018 WL 5816766, at *6.  Nonetheless, the need to send such message "can be one of several considerations that influences a decision to dismiss with prejudice under the third factor."  Ramirez-Flores, 2018 WL 5816766, at *6; Nash, 2010 WL 702438, at *3 ("The Government is correct that the desire to send a strong message is insufficient, standing alone, to bar reprosecution . . .[h]owever, in this instance the non-serious nature of the charges combined with the disturbing trend of failing to comply with the Speedy Trial Act in these types of cases leads the court to the conclusion that a strong message is warranted.").

First, the Court recognizes Defendant has highlighted a number of cases that Defendant argues demonstrates a pattern and practice of noncompliance by the Government in these Class A Misdemeanor cases in the Eastern District.  However, the Court finds it significant that there has not been direct litigation involving Speedy Trial Act violations motions to dismiss since 2014 and 2015 (Opp'n 4-5), and somewhat significant that the Government was represented by law enforcement officers in these cases under Local Rule 180 with no oppositions filed, and thus unclear if the U.S. Attorney's office was on notice and involved to the extent that it would

---

[6]  As noted above, the Ninth Circuit considered the fact there was no evidence of purposeful wrongdoing on the part of the prosecutor when considering the second factor.  Pena-Carrillo, 46 F.3d at 882.  The Ninth Circuit then concluded when considering the third factor that the "purpose of deterring prosecutorial misconduct and delay would be little served by barring reprosecution in this case."  Id. at 883.

demonstrate a direct failure to address the issue, or demonstrate an ongoing culture of noncompliance.  While Defendant cites new cases that apparently involve violations that have not been litigated yet, the Government's counsel emphasizes he is unaware of any Speedy Trial Act litigation in the Eastern District concerning this issue in the last five years.

The Court finds the Government's proffer that a very strong message has already been sent to be somewhat convincing.  The Government submits and affirms that moving forward in all Class A Misdemeanor cases, it will either: (1) file information on Class A misdemeanors at the outset; or (2) initially proceed by complaint and file an information within the statutory time period.  The Court emphasizes it is not the responsibility of the Defendant nor the Court for that matter to educate the Government in the statutory text of the Speedy Trial Act found in 18 U.S.C. § 3161, *et seq.*  The Government owes an obligation to be familiar in full with the Act when prosecuting cases before this Court, not only each section when a violation of such section occurs.[7]

Thus, after this order, there will be a clear record of the Government being put on notice of this and other violations, a record of the Government's affirmation of instituted changes that should reflect a culture of compliance moving forward, and this record will now be in place to bolster any claim in the future that there is a pattern of neglect or noncompliance in such cases.  While this is not a wholly isolated violation by the Government, the totality of the facts and circumstances do not demonstrate a pattern and practice of noncompliance, and the Court finds the Government's recognition of the mistake and proffer of changes in training and practice moving forward not insignificant or that it "rings hollow."  However, the Court agrees Defendant has highlighted and demonstrated issues with training, monitoring cases where such violations have occurred, and in handing down appropriate institutional knowledge.

The Ninth Circuit has described circumstances where there is a pattern of misconduct,

---

[7]  Again, it is the Government's obligation to be mindful of <u>every</u> requirement of the Speedy Trial Act.  In this regard, the Court emphasizes it is hopeful the strong message has indeed been received, as in the Court's experience, it is not clear the various counsel representing the Government that appear before the Court comprehend certain other requirements of the Act.  Specifically, the Court has observed the Government make requests, such as exclusion of time under the Speedy Trial Act, that would presumptively violate the Act.  Again, there is now a clear record of the Government being put on notice if there are future violations, and to be familiar with the Act in its entirety, including when making requests for proper exclusions of time under the Act.

and where the courts or prosecution do not understand clear precedent:

> The district court appeared to remain unaware of the requirements of our case law in 1991, when it retroactively declared that the complexity of the proceedings had tolled the Speedy Trial Act. Even in 1993, *nine years* after we decided *Pollock* and *Frey,* the government's brief in this case sought to defend the district court's actions on the basis of its open-ended "complexity" finding.
>
> In short, the facts of this case demonstrate to us that, a decade after we clearly set forth the procedural requirements for the use of the "ends of justice" exclusion, the day-to-day practice in at least some courts and prosecutor's offices remains unaffected. While not every violation of the Act requires dismissal with prejudice, *see Taylor,* 487 U.S. at 342, 108 S.Ct. at 2422, we believe that the Act's most severe sanction is appropriate where the surrounding circumstances lead us to conclude that district courts and United States Attorneys' offices have failed to recognize or implement our long-standing precedents. We conclude that, on the facts of this case, dismissal with prejudice best comports with the administration of the Act.

*Clymer,* 25 F.3d at 832–33. Again, while not an isolated violation, the Court does not find Defendant has demonstrated the day-to-day practice of the prosecution and the Court in this district reflects a culture of noncompliance, or that the Government is failing to recognize or implement the proper standards under the Speedy Trial Act, given the above facts and the Government's proffer of implementing revised procedures in all Class A Misdemeanor cases.

Significantly, in *Clymer,* the defendant was "detained pending trial . . . was also incarcerated for all but the last five months of the three-year delay on appeal [and] [t]hus, he had served nearly five years of his twenty year sentence when [the Ninth Circuit] filed an order on November 3, 1993, releasing him." *Clymer,* 25 F.3d at 833; see also *Spanier,* 2016 WL 2745330, at *5 ("In *Clymer,* the Ninth Circuit determined that Clymer suffered actual prejudice in terms of both his ability to prepare for trial and in restrictions on his liberty . . . in contrast to Clymer, Spanier fails to identify any evidence or witness made unavailable on account of the delay [a]nd while Spanier has not been in custody except for a few weeks, his personal and financial difficulties have been attributable to his alleged wrongful conduct, not any delay in his retrial."). Given consideration of the length of delay, the reason for the delay, and the prejudice suffered by the Defendant both generally and in relation to the ability to prepare for trial, the Court finds consideration of the third enumerated factor weighs in favor of dismissal without

prejudice.  See Pena-Carrillo, 46 F.3d at 882–83 (given there was "no evidence of purposeful wrongdoing on the part of the prosecutor [and] [t]he failure to secure an indictment within 30 days was apparently inadvertent, and the U.S. Attorney's Office attempted to rectify this error by indicting Pena–Carrillo as soon as possible thereafter," demonstrated the "purpose of deterring prosecutorial misconduct and delay would be little served by barring reprosecution."); Montecalvo, 861 F. Supp. 2d at 117 ("The Court here does not find this to be an isolated unwitting violation of the Speedy Trial Act . . . [y]ears passed without any documented effort on the part of the Government to move the case to the next stage of the criminal procedure, and this can only be properly characterized as a lackadaisical attitude towards Montecalvo's prosecution."); Dominguez-Zamdio, 211 F.3d 1275 (in considering prejudice under third factor, noting "the length of the detention did not adversely affect Dominguez' ability to prepare for trial."); Lewis, 611 F.3d at 1180.

Given this is not an isolated incident, the Court's weighing of this third factor presents a somewhat close call as to whether dismissal with or without prejudice is appropriate.  See Clymer, 25 F.3d at 832; Taylor, 487 U.S. at 339.  However, given there is no substantial delay or prejudice (aside from the anxiety discussed above), and no purposeful misconduct on the part of the Government, the Court finds this factor tips slightly in favor of dismissal without prejudice. See Upton, 921 F. Supp. at 105 ("The prolonged delays in this case are the targets at which the Speedy Trial Act was clearly aimed and weighs heavily in the balance as does the adverse effect those prolonged delays must inevitably have upon the presentation of a meaningful defense."); Fawster, 2013 WL 4047120, at *5 (in case where charged with pulling fire alarms, where defendant was detained for three days, spent four months on GPS monitoring, and almost nine months subject to Pretrial Services, with restrictions on ability to travel and loss of access to passport and personal possessions, finding "[i]ndeed, this is a case where the adverse impact on the Defendant caused by the pendency of the charge is likely a sufficient deterrent . . . may be one case where the hackneyed phrase—'he has been punished enough'—rings true."); Taylor, 487 U.S. at 339 ("The District Court did not find that the Government acted in bad faith with respect to respondent; neither did the court discover any pattern of neglect by the local United

States Attorney, or evidence of what the Court of Appeals' majority later termed the government's apparent antipathy toward a recaptured fugitive.") (internal quotations and citation omitted); <u>Ramirez-Flores</u>, 2018 WL 5816766, at *6 ("Here, there is no evidence of [purposeful] wrongdoing by the prosecutors [and] [t]he Court concludes that the third factor of subsection 3162(a) weighs in favor of dismissing the indictment without prejudice.").

As the Supreme Court has recognized, "[d]ismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds."  <u>Taylor</u>, 487 U.S. at 342. Further, even if this third factor tipped toward weighing in favor of dismissal with prejudice because of the strictly non-isolated nature of the violation, given the Court's findings regarding the first factor of seriousness, the second factor of the facts and circumstances leading to dismissal, and the additional factor of prejudice (whether considered separately or as incorporated into consideration of the second and third enumerated factors), the Court would still find this action should be dismissed without prejudice in consideration of all of the enumerated and relevant factors.  18 U.S.C. § 3162(a)(2).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.

## CONCLUSION AND ORDER

Pursuant to consideration of the factors enumerated in 18 U.S.C. § 3162(a)(2), the Court concludes that dismissal of the information without prejudice is the appropriate remedy for the underlying Speedy Trial Act violation.

Accordingly, IT IS HEREBY ORDERED that:

1.   Defendant's motion to dismiss this action with prejudice (ECF No. 13) is DENIED to the extent it seeks dismissal with prejudice; and

2.   This action is DISMISSED without prejudice.

IT IS SO ORDERED.

Dated:   **August 10, 2022**

UNITED STATES MAGISTRATE JUDGE